1  SHAWN N. ANDERSON
   United States Attorney
2  LAURA C. SAMBATARO
   Assistant U.S. Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
4  Hagåtña, Guam  96910
   PHONE: (671) 472-7332
5  FAX: (671) 472-7215

6  Attorneys for the United States of America

7

8                     IN THE UNITED STATES DISTRICT COURT

9                         FOR THE TERRITORY OF GUAM

   UNITED STATES OF AMERICA,          MAGISTRATE CASE NO. 20-00112
10
                      Plaintiff,
11
                      vs.             **PETITION FOR WRIT OF REMOVAL**
12
   TAO LIU,
13 a/k/a "Xiong Liu," a/k/a "Ming Lu," a/k/a
   "Antony Liu," a/k/a "Lucas Liu," a/k/a
14 "Tao Jason Liu," a/k/a "Antony Lee," a/k/a
   "Zhong Liu,"
15
                      Defendant.
16
          Petitioner, the United States Attorney for the District of Guam, respectfully shows this
17
   Court that:
18
          1.      On September 24, 2020, a superseding indictment was issued by a grand jury
19
   sitting in the United States District Court for the Eastern District of Virginia charging the
20
   defendant with: (1) Conspiracy to Distribute Five Kilograms or More of Cocaine in violation of
21
   21 U.S.C. §§ 841 and 846; (2) Conspiracy to Distribute Five Kilograms or More of Cocaine,
22
   Knowing and Intending it Will Be Unlawfully Imported Into the United States in violation of 21
23
   U.S.C. §§ 959, 960, and 963; (3) Conspiracy to Commit Money Laundering in violation of 18
24
   PETITION FOR WRIT OF REMOVAL- 1



FILED
DISTRICT COURT OF GUAM
OCT 14 2020
JEANNE G. QUINATA
CLERK OF COURT

ORIGINAL

1  U.S.C. § 1956(h); (4) Attempted Identity Fraud in violation of 18 U.S.C. § 1028(a)(1) & (f); (5)

2  Bribery; (6) Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h); and

3  (7) Money Laundering in Violation of 18 U.S.C. § 1956(a)(2)(A).

4        2.      On September 24, 2020, the United States District Court for the Eastern District

5  of Virginia issued a warrant of arrest for the defendant to be brought to the Eastern District of

6  Virginia to answer to the charges in the superseding indictment. A copy of the superseding

7  indictment and warrant for arrest are attached and incorporated herein as Exhibit 1.

8        3.      On October 13, 2020, the defendant was arrested upon arrival in Guam.

9        WHEREFORE, petitioner prays this Court to issue a writ of removal pursuant to Rule

10  5(c) of the Federal Rules of Criminal Procedure, for said defendant from the District of Guam to

11  the Eastern District of Virginia.

12        DATED this 14th day of October, 2020.

13

14  SHAWN N. ANDERSON
   United States Attorney
   Districts of Guam and the NMI

15

16  By: _____

17       LAURA C. SAMBATARO
     Assistant U.S. Attorney

18

19

20

21

22

23

24

PETITION FOR WRIT OF REMOVAL- 2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | CRIMINAL NO. 1:19-CR-334 |

XIZHI LI, (Counts 1-3)
a/k/a "Juan Lee,"
a/k/a "John Lee,"
a/k/a "Francisco Ley Tan,"
a/k/a "Francisco Ley,"
a/k/a "Z,"
a/k/a "Juan Lee Gonzalez,"
a/k/a "Juan Francisco Lee Gonzalez,"
a/k/a "Juan Francisco Lee,"
a/k/a "John Vallejo Lee,"
a/k/a "Juan Li,"
a/k/a "Xi Zhi Li,"
a/k/a "Hsi Chih Li,"
a/k/a "Ah Chih,"
a/k/a "A Zhi,"
a/k/a "Ju Chai,"
a/k/a "Piglet,"
a/k/a "Juanito,"

JIANXING CHEN, (Counts 1-3)
a/k/a "John Chen,"
a/k/a "John,"
a/k/a "Big Brother Heng,"
a/k/a "Hanguo,"
a/k/a "Jian Xing Chen,"

JINGYUAN LI, (Counts 1-3)
a/k/a "Le Yoon,"
a/k/a "Yuan,"
a/k/a "Yin,"
a/k/a "Ah Yuen,"
a/k/a "Shui Goo Yuen,"
a/k/a "Ching Lung,"
a/k/a "Hui Long,"

**Count 1:** Conspiracy to Distribute
Five Kilograms or more of
Cocaine
(21 U.S.C. §§ 841 & 846)

**Count 2:** Conspiracy to Distribute
Five Kilograms or more of
Cocaine, Knowing and
Intending it will be Unlawfully
Imported into the United States
(21 U.S.C. §§ 959, 960, 963)

**Count 3:** Conspiracy to Commit Money
Laundering
(18 U.S.C. §1956(h))

**Counts 4-7:** Attempted Identity Fraud
(18 U.S.C. §§ 1028(a)(1) & (f))

**Counts 8-11:** Bribery
(18 U.S.C. § 201(b)(1))

**Count 12:** Conspiracy to Commit Money
Laundering
(18 U.S.C. § 1956(h))

**Counts 13-14:** Money Laundering
(18 U.S.C. § 1956(a)(2)(A))

**Forfeiture Notice:** 18 U.S.C. § 982;
21 U.S.C. §§ 853 & 970

GOVERNMENT
EXHIBIT

1

ERIC YONG WOO, (Count 3)
a/k/a "Nan Li,"
a/k/a "Yong Zhao Hu,"

JIAYU CHEN, (Counts 1-3)
a/k/a "John's Brother in-law,"
a/k/a "Jaiyu Chen,"

TAO LIU, (Counts 1-14)
a/k/a "Xiong Liu,"
a/k/a "Ming Lu,"
a/k/a "Antony Liu,"
a/k/a "Jason Liu Tao,"
a/k/a "Lucas Liu,"
a/k/a "Tao Jason Liu,"
a/k/a "Antony Lee,"
a/k/a "Zhong Liu,"

Defendants.

## SUPERSEDING INDICTMENT

September 2020 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

### THE CONTROLLED SUBSTANCES ACT

At all times relevant to this Superseding Indictment:

1.      Having determined that "[t]he illegal importation, manufacture, distribution and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people[,]" Congress enacted the Controlled Substances Act (CSA), 21 U.S.C. § 801, *et seq.*

2.      There are five "schedules" of controlled substances, known as Schedule I, II, III, IV, and V. Substances are "scheduled" depending on their potential for abuse and recognized

2

medical usage. For example, a drug listed in Schedule II has a high potential for abuse but also has an accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. 21 U.S.C. § 812, *et seq*.

3.    Cocaine is a narcotic drug listed in Schedule II. 21 U.S.C. §§ 802(17)(D) & 812.

4.    Per the CSA, no person may, without authorization, knowingly or intentionally manufacture, distribute or dispense, or possess with the intent to manufacture, distribute or dispense a controlled substance, or conspire or attempt to do the same. 21 U.S.C. §§ 841 & 846.

5.    The CSA has extraterritorial application. Specifically, it reaches acts of distribution and manufacture of Schedule I and II controlled substances, and conspiracies to do the same, that occur outside the United States when such acts are undertaken with the knowledge and intent that they will result in the unlawful importation of Schedule I and II controlled substances into the United States. 21 U.S.C. §§ 959 & 963.

### *CONCEALMENT MONEY LAUNDERING*

6.    It is unlawful to conduct or attempt to conduct a financial transaction affecting in any degree interstate or foreign commerce involving the proceeds of a "specified unlawful activity," knowing that the property involved in the financial transaction represents some form of unlawful activity and knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, or to conspire to do the same. 18 U.S.C. §§ 1956(h) & (a)(1)(B)(i).

7.    Violations of the CSA involving the felonious importation, receiving, buying, selling or otherwise dealing in controlled substances are a "specified unlawful activity" for purposes of the prohibitions outlined in 18 U.S.C. § 1956(a). 18 U.S.C. §§ 1956(c)(7), 1961(1)(D).

3

## THE ECONOMY OF INTERNATIONAL COCAINE TRAFFICKING

8.     The United States is one of the world's largest and most lucrative markets in which to distribute illegal drugs including, but not limited to, cocaine.

9.     The overwhelming majority of the cocaine consumed in the United States is produced in South America in countries like Colombia, Bolivia, and Peru.

10.     The process of transporting cocaine out of South America and importing it into the United States is complex and generally involves numerous organizations and individuals. The price of cocaine continually increases along this supply chain, culminating at the point of sale to users in the United States.

11.     This trade generates enormous illicit profits in the United States in the form of U.S. Dollars. For this criminal business to continue and achieve its purpose, it is necessary for a portion of this money to be repatriated to the foreign drug trafficking organizations (DTO) that manufactured and distributed the cocaine in Latin America, and ultimately brought the cocaine into the United States. However, because this money is the proceeds of a "specified unlawful activity," special care and skill has to be taken to transact it to avoid detection by law enforcement.

12.     Simultaneously, there is a large demand for U.S. Dollars and U.S. merchandise around the world including, though not exclusively, in China. There is also a high demand for Chinese currency, known as yuan or remnbi (RMB), among Latin American merchants, including those in Mexico, seeking to purchase Chinese goods to sell for profit. As a result, individuals with connections to "black market merchants" in China, and foreign, often Mexican, DTOs and merchants are well situated to profit by servicing these parallel demands.

4

## *TRADE BASED MONEY LAUNDERING & MIRROR TRANSFERS*

13.     Individuals and organizations at the nexus of these needs meet them by taking possession of drug profits in the United States, including those obtained from the sale of cocaine, and: (1) transmitting them in a manner designed to cause an equivalent amount of currency to arrive in bank accounts in China[1]; or (2) by using the cash to purchase U.S. goods that are subsequently shipped to China for re-sale.  In either case, affirmation that the cash changed hands in the United States—from "dealers" to "launderers"— triggers the release of funds in the location where they are required.  For the purposes of this Superseding Indictment, this exchange is known as a "mirror transfer."  Once the proceeds are received in China, they are used to finance the purchase of Chinese goods.  Merchants in Latin American countries, including Mexico, seek the services of "brokers" capable of obtaining RMB to finance the purchase of Chinese merchandise.  Once purchased, this merchandise is shipped to the Latin American merchant, including those in Mexico, who sells it for profit through apparently legitimate businesses.  This cycle exists to the mutual benefit of all involved.

14.     The individuals responsible for arranging these transactions are compensated on the basis of their success in organizing and executing the transactions and the amount of money involved.  It is thus common that individuals engaged in the business of moving money in this or similar fashion forge connections with Latin American DTOs to obtain as many "contracts" as possible, thereby maximizing their personal profits through "commissions."  It follows that these individuals, along with their co-conspirators, rely on and seek to further the continued success of the cocaine trade in the United States.

---

[1] For purposes of this Superseding Indictment, China is understood to include Hong Kong.

15.     For the purpose of this Superseding Indictment, a "contract" is an agreement to obtain money already in the United States and conduct financial transactions with that money so it, or its equivalent value, can be provided to individuals and groups whose activities generated it. Relatedly, a "commission" is a percentage of the money involved in the transaction.

## THE SCHEME

16.     XIZHI LI, JIANXING CHEN, JINGYUAN LI, ERIC YONG WOO, JIAYU CHEN, TAO LIU, and others, both known and unknown to the Grand Jury, are joined to an organization of individuals in the United States, Mexico, Belize, Guatemala, China, and elsewhere, who conduct financial transactions with proceeds derived from the unlawful sale of controlled substances, including cocaine. The transactions were designed to conceal the nature, location, source, ownership, and control of the proceeds so that they could be provided to individuals and organizations responsible for trafficking cocaine into the United States. The conspirators' ultimate goal was to enrich themselves to the greatest extent possible by conducting these transactions.

17.     The defendants cultivated relationships with numerous DTOs and individuals affiliated with these DTOs to obtain as many "contracts" as possible to maximize the value of their "commissions."

18.     The conspiracy included and utilized individuals in the United States who obtained cash from individuals associated with drug traffickers. These individuals would validate their ability to collect the requested funds by presenting a verification code, which often included a serial number taken from U.S. or foreign currency.

19.     The conspiracy used other secretive and clandestine methods to accomplish its goals. For example:

6

a. it was common for an individual involved in this conspiracy to transport drug proceeds across the United States so they could be further transacted by the defendants and/or their co-conspirators several states removed from where the proceeds were generated;

b. the defendants used encrypted communications platforms to discuss their illegal activities including, but not limited to, cellular telephone applications known as "WeChat" and "WhatsApp";

c. the defendants used bank accounts in the United States, China, and elsewhere to deposit and conduct financial transactions with drug proceeds, including those derived from the sale of cocaine. Some of these accounts were obtained by the defendants under false identities;

d. the defendants used businesses in the United States and abroad as a means to conceal the money they were receiving.

20. The defendants and their co-conspirators performed various tasks and took on various roles in furtherance of the conspiracy. For example:

a. XIZHI LI (hereafter "LI"), was born in China but at times relevant to the Superseding Indictment, was believed to reside primarily in Mexico and Guatemala. He forged close ties with drug traffickers and DTOs in Mexico, Colombia, Guatemala, and elsewhere, to obtain contracts to conduct financial transactions with their United States-based proceeds. LI worked with numerous individuals in the United States to organize the movement of drug proceeds. LI utilized several fictitious identities in connection with his criminal activities including, but not limited to, the alias "Francisco Ley Tan." LI used this identity

7

to obtain bank accounts in Miami, Florida, and to purchase a casino in Guatemala City, Guatemala. LI used the casino to further his drug trafficking and money laundering schemes. LI also used the WeChat screennames "SUPERKING 99" and "JL 007," among others, in connection with his criminal activities.

b. JIANXING CHEN (hereafter "CHEN"), was born in China but is believed to reside primarily in Belize. CHEN and LI worked together to forge connections with drug traffickers in Mexico, Colombia, Guatemala, and elsewhere. CHEN had a financial and management interest in LI's casino in Guatemala City. Like LI, CHEN used the casino as part of, and to further, his criminal activities. CHEN traveled to New York City, Los Angeles, Cancun, Guatemala City, and elsewhere, in connection with his criminal activities. CHEN would often direct others to collect and transport drug trafficking proceeds so that they could be used in subsequent financial transactions. Some of these proceeds were collected in and transited through the Eastern District of Virginia. CHEN used encrypted communications including, but not limited to, WhatsApp in connection with his criminal activities.

c. JIAYU CHEN (hereafter "JAIYU"), is CHEN's brother-in-law and a U.S. citizen believed to reside in Brooklyn, New York. JAIYU conducted financial transactions involving drug proceeds, including those derived from the sale of cocaine. Among his activities, JAIYU received drug proceeds from couriers, including those acting at CHEN's direction.

d. JINGYUAN LI (hereafter "JINGYUAN"), was born in China but is believed to reside primarily in California and/or Mexico. JINGYUAN worked with LI and others to gather cash generated by illegal activities in the United States, including

8

the unlawful sale of drugs. JINGYUAN operated an import/export business whose purpose, in part, was to generate currency that LI could use to re-pay foreign DTOs as part of their money laundering process. JINGYUAN used WeChat in connection with his criminal activities.

e. ERIC YONG WOO (hereafter "WOO"), was born in China but is believed to reside primarily in California. WOO worked with co-conspirators to gather and transport cash generated by the sale of drugs in the United States. WOO also worked with co-conspirators including, but not limited to LI, to obtain fraudulent identity documents for, among other things, use in money laundering activities.

f. TAO LIU (hereafter "TAO"), was born in China and is believed to currently reside in Hong Kong. TAO worked with LI to begin money laundering in locations including Mexico and Guatemala. TAO also uses encrypted messaging platforms, including WeChat and WhatsApp, to further his criminal activities.

21. From at least 2008 and continuing up to and through the date of this Superseding Indictment, the defendants, together with co-conspirators known and unknown to the Grand Jury, transacted millions of dollars derived from the importation and distribution of drugs, primarily cocaine, in the United States.

## COUNT ONE
(Conspiracy to Distribute Five Kilograms or more of Cocaine)

THE GRAND JURY FURTHER CHARGES THAT:

22. The factual allegations contained in Paragraphs 1 through 21 are re-alleged and incorporated as if set forth here in their entirety.

## STATUTORY ALLEGATION

23. From in and around 2008 and continuing thereafter up to and including the date of

9

this Superseding Indictment, the exact dates being unknown to the Grand Jury, within the Eastern District of Virginia, and elsewhere, the defendants XIZHI LI, JIANXING CHEN, JIAYU CHEN, JINGYUAN LI, and TAO LIU, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

## OBJECT OF THE CONSPIRACY

24.     The object of the conspiracy was to distribute narcotics. The defendants sought to facilitate the success of DTOs who imported and distributed drugs, including cocaine, in the United States. The defendants did this by conducting financial transactions with the proceeds derived from the illegal sale of drugs, including cocaine. These transactions were designed, at least in part, to conceal the nature, location, source, ownership, and control of the involved funds. The defendants profited through commissions based on the amount of money involved in each financial transaction. These commissions came directly and indirectly from the DTOs with whom they conspired. The defendants and their co-conspirators used the following ways, manners, and means among others, to carry out this purpose:

## WAYS, MANNERS, AND MEANS

### *Francisco Ley Tan, Fraudulent Identity Documents, the Casino, and the BBVA Compass Accounts*

25.     It was part of the conspiracy that LI used several aliases, including but not limited to the name "Francisco Ley Tan."

26.     It was further part of the conspiracy that LI, and others, used fraudulently obtained identity documents, including passports, as part of their scheme to launder illicit money, including drug proceeds.

10

27.  It was further part of the conspiracy that LI owned and operated a casino in Guatemala City, Guatemala, associated with the business names "MGM Diamond Group" and later "MGM Golden Group." The registered agent for this business was "Francisco Ley Tan." At times during the conspiracy, CHEN aided LI in operating the casino.

28.  It was further part of the conspiracy that LI, CHEN, and their co-conspirators, both known and unknown to the Grand Jury, would use the casino to further their drug-trafficking activities. This included using the casino to arrange meetings with drug traffickers.

29.  It was further part of the conspiracy that LI operated bank accounts with BBVA Compass in Miami, Florida, including, but not limited to, accounts ending in 7573, 2366, and 8084, all of which were registered to Francisco Ley Tan at 1450 Brickell Ave, Suite 2000, Miami, Florida 33131. This address was BBVA Compass's corporate address in Miami.

### CROSS-COUNTRY "PICKUPS" AND DELIVERIES, THE SERIAL CODE, AND "MIRROR TRANSFERS"

30.  It was further part of the conspiracy that the defendants and their co-conspirators traveled to various locations throughout the United States, including the Eastern District of Virginia, to collect and cause the collection of proceeds derived from drug trafficking. The defendants and their co-conspirators would also transport and cause the transportation of kilograms-quantities of cocaine across the United States.

31.  It was further part of the conspiracy that the defendants and their co-conspirators would present a verification code when they arrived at locations where drug proceeds, including cocaine proceeds, were stored. That code typically included the serial number from U.S. or foreign currency. The defendants and their co-conspirators would often send or receive electronic messages containing images of currency displaying the serial number.

11

32.     It was further part of the conspiracy that upon verifying that the defendants or their co-conspirators were authorized to obtain the cocaine proceeds, that currency of equivalent value would be released in a requested location. This currency would be provided to a drug trafficker or representative of a DTO to whom the money was owed, thus completing the "mirror transfer" process.

33.     It was further part of the conspiracy that the defendants and their co-conspirators, both known and unknown, would meet in various locations, including parking lots and hotels, to deliver cash, including United States currency generated by drug sales in the United States, and bank account information indicating where the cash should be deposited.

34.     It was further part of the conspiracy that if law enforcement seized proceeds that were to be used in the "mirror transfer," the defendants and their co-conspirators were obliged to re-pay that money to the DTOs. Re-payment often came in the form of either direct cash compensation, or by moving a DTO's money without receiving a commission.

*USE OF CHINESE BANK ACCOUNTS*

35.     It was further part of the conspiracy that the defendants and their co-conspirators, both known and unknown, controlled or had access to accounts with Chinese financial institutions, including but not limited to the Agricultural Bank of China and the Industrial and Commercial Bank of China. These accounts were used to receive and transact money derived from drug sales, including the sale of cocaine, in the United States.

*USE OF BUSINESSES*

36.     It was further part of the conspiracy that the defendants and their co-conspirators, both known and unknown, used otherwise legitimate businesses as part of their scheme to

12

launder money on behalf of foreign DTOs.

(All in violation of 21 U.S.C. § 846).

**COUNT TWO**
(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing
and Intending that it would be Unlawfully Imported into the United States)

THE GRAND JURY FURTHER CHARGES THAT:

37.     The factual allegations contained in Paragraphs 1 through 21 are re-alleged and incorporated as if set forth here in their entirety.

**STATUTORY ALLEGATION**

38.     From in and around 2008 and continuing thereafter up to and including the date of this Superseding Indictment, the exact dates being unknown to the Grand Jury, within the jurisdiction of the United States and in an offense begun and committed outside the jurisdiction of a particular State or district, including in Mexico, Colombia, Guatemala, Belize, China, and the United States, and elsewhere, the defendants JIANXING CHEN, who will be first brought to the Eastern District of Virginia, and XIZHI LI, JINGYUAN LI, JIAYU CHEN, and TAO LIU, who will be first brought to the Eastern District of Virginia and whose joint offenders will be first brought to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a), and 963, and 18 U.S.C. § 3238.

**OBJECT OF THE CONSPIRACY**

39.     The object of the conspiracy was to distribute narcotics knowing and intending that it would be unlawfully imported into the United States.  The defendants sought to facilitate the

13

success of DTOs who imported and distributed drugs, including cocaine, in the United States. The defendants did this by conducting financial transactions with the proceeds derived from the illegal sale of drugs, including cocaine. These transactions were designed, at least in part, to conceal the nature, location, source, ownership, and control of the involved funds. The defendants profited through commissions based on the amount of money involved in each financial transaction. These commissions came directly and indirectly from the DTOs with whom they conspired. The defendants and their co-conspirators used the following ways, manners, and means among others, to carry out this purpose:

## WAYS, MANNER, AND MEANS

40.     The allegations set forth in Paragraphs 25 through 36 are re-alleged and incorporated as if set forth her in their entirety to describe the ways, manner, and means of the conspiracy.

(All in violation of 21 U.S.C. § 963).

## COUNT THREE
(Money Laundering Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

41.     The factual allegations contained in Paragraphs 1 through 21 are re-alleged and incorporated as if set forth here in their entirety.

## STATUTORY ALLEGATION

42.     Beginning in and around 2008, and continuing until at least in and around the date of this Superseding Indictment, the exact dates being unknown to the Grand Jury, within the Eastern District of Virginia, and elsewhere, the defendants XIZHI LI, JIANXING CHEN, JINGYUAN LI, JIAYU CHEN, ERIC YONG WOO, and TAO LIU, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the

14

Grand Jury, to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a. to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute controlled substances as alleged in Count One and conspiracy to distribute controlled substances knowing and intending that they would be unlawfully imported as alleged in Count Two of this Superseding Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, that is, the conspiracies as alleged in Counts One and Two, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds involving the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances as alleged in Count One and conspiracy to distribute controlled substances knowing and intending that they would be unlawfully imported as alleged in Count Two of this Superseding Indictment, from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i);

15

## OBJECT OF THE CONSPIRACY

43.     The object of the conspiracy was to conduct financial transactions with the proceeds derived from the illegal sale of drugs, including cocaine. These transactions were designed, at least in part, to conceal the nature, location, source, ownership, and control of the involved funds. The defendants profited through commissions based on the amount of money involved in each financial transaction. These commissions came directly and indirectly from the DTOs with whom they conspired. The defendants facilitated the continued success of DTOs who imported and distributed drugs, including cocaine, in the United States. The defendants and their co-conspirators used the following ways, manners, and means among others, to carry out this purpose:

## WAYS, MANNER, AND MEANS

44.     The ways, manner, and means of the conspiracy charged in Paragraphs 25 through 36 of Count One are re-alleged and incorporated as if set forth here in their entirety to describe the ways, manner, and means of the conspiracy charged in Count Three.

        (All in violation of 18 U.S.C. § 1956(h)).

## COUNTS FOUR THROUGH SEVEN
### (Attempted Identity Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

## INTRODUCTION

At all times relevant to this Superseding Indictment:

45.     The United States Department of State is a department of the executive branch of the United States Government responsible for, among other things, issuing passports to United States citizens and non-citizen United States nationals. 8 U.S.C. § 1185(b); 22 C.F.R. §§§ 51.1, 51.2, and 53.1.

46.     UC-1 was a Special Agent of the Drug Enforcement Administration, acting in an

16

undercover capacity, who, between in and around April 2020 and the filing of this Superseding Indictment, communicated with defendant TAO. TAO desired, through fraudulent and corrupt means, to obtain United States passports for multiple people. UC-1 represented that he knew an employee of the United States Department of State who would produce and cause the production of the passports for a fee of approximately $150,000 per passport. This fee included an upfront payment of approximately $10,000 to begin the process of producing and causing the production of fraudulent United States passports.

47.     UC-2 was a Special Agent of the Drug Enforcement Administration, acting in an undercover capacity, who represented himself to be a United States Department of State employee who was acquainted with UC-1 and willing to produce and cause the production of United States passports for those not otherwise entitled to obtain, possess, or use such passports in exchange for approximately $150,000 per passport.

### THE SCHEME

48.     UC-1 and TAO agreed to share the cost of the initial fee to entice UC-2 to begin creating the requested passports.

49.     On or about May 25, 2020, TAO provided a completed Application for a Passport (Form DS-11) that contained his personal information. UC-1 previously explained to TAO that this completed form was necessary for UC-2 to have the appropriate biographical information to create his fraudulent United States passport.

50.     On or about June 7, 2020, TAO caused the transmission of approximately $1,000 of cryptocurrency to an account controlled by the Drug Enforcement Administration. Before causing this transmission, TAO understood that UC-1 would convert the cryptocurrency to United States Dollars ("USD"), which he (UC-1) would then deposit into a Bank of America account

17

ending in 4338 and associated with routing number 051000017 ("the Bank of America Account").

UC-1 and UC-2 converted this cryptocurrency to USD and deposited the USD into the Bank of America account. UC-1 informed TAO that he deposited the money into the Bank of America account.

51.     On or about June 11, 2020, TAO caused the transmission of approximately $4,000 of cryptocurrency to an account controlled by the Drug Enforcement Administration. UC-1 and UC-2 converted this cryptocurrency to USD and deposited the USD into the Bank of America account. UC-1 informed and confirmed to TAO that he transferred the USD into the Bank of America account.

52.     On or about July 5, 2020, TAO caused the transmission of approximately $3,000 from a JP Morgan Chase account ending in 7828 ("the JP Morgan Chase account") to the Bank of America account.

53.     On or about July 6, 2020, TAO caused the transmission of approximately $2,000 from the JP Morgan Chase account to the Bank of America account.

54.     The purpose of the transmissions of USD and cryptocurrency on or about June 7, June 11, July 5, and July 6, 2020, was to cause UC-2 to create fraudulent United States passports.

## STATUTORY ALLEGATIONS

55.     On or about the dates listed below, within the Eastern District of Virginia, and elsewhere, the defendant, TAO LIU, did knowingly and without lawful authority attempt to produce identification documents, to wit: United States passports, and that such identification documents were and appeared to have been issued by and under the authority of the United States, and the production of such identification documents were in and affecting interstate and foreign commerce:

18

| Count | Date | Substantial Step | Identification Document |
|-------|------|------------------|--------------------------|
| 4 | 6/7/20 | Causing transmission of 1000 USDT (approximately $995 USD) | United States Passport for TL |
| 5 | 6/11/20 | Causing transmission of 4000 USDT (approximately $3,981 USD) | United States Passport for TL |
| 6 | 7/5/20 | Causing transmission of approximately $3,000 USD | United States Passport for CM |
| 7 | 7/6/20 | Causing transmission of approximately $2,000 USD | United States Passport for CM |

(All in violation of 18 U.S.C. §§§ 1028(a)(1), (b)(1)(A), & (f); 18 U.S.C. § 2; 18 U.S.C. § 3237).

## COUNTS EIGHT THROUGH ELEVEN
### (Bribery)

THE GRAND JURY FURTHER CHARGES THAT:

At all times relevant to this Superseding Indictment:

56.     The factual allegations contained in Paragraphs 45 through 54 are re-alleged and incorporated as if set forth here in their entirety.

57.     A "public official" includes a Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.  18 U.S.C. § 201(a)(1).

58.     An "official act" includes any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of

19

trust or profit. 18 U.S.C. § 201(a)(3).

## STATUTORY ALLEGATIONS

59.     On or about the dates set forth below, within the Eastern District of Virginia, and

elsewhere, the defendant, TAO LIU, did directly and indirectly, corruptly give, offer, and promise

a thing of value to a public official, with the intent to influence an official act; and influence a

public official to commit and aid in committing and collude in, and allow, and to make opportunity

for the commission of a fraud on the United States; and induce a public official to do an act and

omit to do an act in violation of his lawful duty, that is, TAO LIU made payments to UC-2 through

UC-1 as follows:

| Count | Date | Thing of Value |
|-------|------|----------------|
| 8 | 6/7/20 | 1000 USDT (approximately $995 USD) |
| 9 | 6/11/20 | 4000 USDT (approximately $3,981 USD) |
| 10 | 7/5/20 | approximately $3,000 USD |
| 11 | 7/6/20 | approximately $2,000 USD |

(All in violation of 18 U.S.C. § 201(b)(1)(A)-(C); 18 U.S.C. § 2; 18 U.S.C. § 3237).

## COUNT TWELVE
(Money Laundering Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

60.     The factual allegations contained in Paragraphs 45-54, and 57-58 are re-alleged

and incorporated as if set forth here in their entirety.

## STATUTORY ALLEGATION

61.     Beginning in and around 2020, and continuing until at least in and around the date

of this Superseding Indictment, the exact dates being unknown to the Grand Jury, within the

20

Eastern District of Virginia, and elsewhere, the defendant TAO LIU, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, to wit: to transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, attempted identity fraud as alleged in Counts Four through Seven and bribery as alleged in Counts Eight through Eleven, in violation of 18 U.S.C. §1956(a)(2)(A).

## OBJECT OF THE CONSPIRACY

62.     The object of the conspiracy was to transfer money to a place inside the United States from or through a place outside of the United States to promote and enable the bribery of a public official to create identification documents, to wit: United States passports, to which TAO and his co-conspirators were not entitled.  The defendant and his co-conspirators used the following ways, manners, and means among others, to carry out this purpose:

## WAYS, MANNER, AND MEANS

63.     The ways, manner, and means of the conspiracy charged in Paragraphs 45 through 54, and 57-58, re-alleged and incorporated as if set forth here in their entirety to describe the ways, manner, and means of the conspiracy charged in Count Twelve.

(All in violation of 18 U.S.C. § 1956(h)).

## COUNTS THIRTEEN AND FOURTEEN
(Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

64.     The factual allegations contained in Paragraphs 45-54, and 57-58 are re-alleged and incorporated as if set forth here in their entirety.

21

## STATUTORY ALLEGATION

65.     On or about the dates set below, within the Eastern District of Virginia, and elsewhere, the defendant TAO LIU, did transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, attempted identity fraud as alleged in Counts Four through Seven and bribery as alleged in Counts Eight through Eleven;

| Count | Date | Monetary Instrument / Funds |
|-------|------|------------------------------|
| 13 | 6/7/20 | 1000 USDT (approximately $995 USD) |
| 14 | 6/11/20 | 4000 USDT (approximately $3,981 USD) |

(All in violation of 18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. § 2; 18 U.S.C. § 3237).

22

## FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS probable cause that the property described in this NOTICE
OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.


Pursuant to Fed.R.Crim.P. 32.2(a), the defendants, are hereby notified that if convicted of Counts
One and Two of this Superseding Indictment, they shall forfeit to the United States, pursuant to
21 U.S.C. §§ 853(a) and 970, any property constituting, or derived from, any proceeds each
defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's
property used, or intended to be used, in any manner or part, to commit, or to facilitate the
commission of, such violation.

If convicted of Count Three of this Superseding Indictment, the defendants shall forfeit to
the United States, pursuant to 18 U.S.C. § 982(a)(1) all property, real or personal, involved in the
offense and any property traceable thereto. The property subject to forfeiture includes at least:

    a. A money judgment of at least $30 million in United States currency representing
        proceeds the defendants obtained in the course of the drug conspiracies and property
        involved in the money laundering conspiracy, as alleged in this Superseding
        Indictment;

If any of the above-described forfeitable property, as a result of any act or omission of the
defendants:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

23

e. Has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), and as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of forfeitable property described in this forfeiture allegation, and, where applicable for couriers, pursuant to the prerequisites in 18 U.S.C. § 982(b)(2).

If convicted of Counts Twelve through Fourteen of this Superseding Indictment, defendant TAO LIU shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1) all property, real or personal, involved in the offense and any property traceable thereto. The property subject to forfeiture includes at least:

a. 1000 USDT (approximately $995 USD) provided by TAO on June 7, 2020;

b. 4000 USDT (approximately $3981 USD) provided by TAO on June 11, 2020;

c. $3000 USD provided by TAO on July 5, 2020;

d. $2000 USD provided by TAO on July 6, 2020.

(Pursuant to 18 U.S.C. § 982 and 21 U.S.C. §§ 853 & 970 and Fed.R.Crim.P.32.2).

24

A TRUE BILL

████████████████████

ᵀForeperson ᵛ

G. Zachary Terwilliger
United States Attorney

By: _____
David A. Peters
Michael P. Ben'Ary
Assistant United States Attorneys


Deborah Connor
Chief, Money Laundering and Asset Recovery Section
U.S. Department of Justice, Criminal Division

By: _____
Kerry Blackburn
Stephen Sola
Trial Attorneys

25

# UNITED STATES DISTRICT COURT
### Eastern District of Virginia
### Alexandria Division

## THE UNITED STATES OF AMERICA

*vs.*

**XIZHI LI,** a/k/a "Juan Lee," a/k/a "John Lee," a/k/a "Francisco Ley Tan," a/k/a "Francisco Ley," a/k/a "Z," a/k/a "Juan Lee Gonzalez," a/k/a "Juan Francisco Lee Gonzalez," a/k/a "Juan Francisco Lee," a/k/a "John Vallejo Lee," a/k/a "Juan Li," a/k/a "Xi Zhi Li," a/k/a "Hsi Chih Li," a/k/a "Ah Chih," a/k/a "A Zhi," a/k/a "Ju Chai," a/k/a "Piglet," a/k/a "Juanito,"

**JIANXING CHEN,** a/k/a "John Chen," a/k/a "John," a/k/a "Big Brother Heng," a/k/a "Hanguo,"a/k/a "Jian Xing Chen,"

**JINGYUAN LI,** a/k/a "Le Yoon," a/k/a "Yuan," a/k/a "Yin," a/k/a "Ah Yuen," a/k/a "Shui Goo Yuen," a/k/a "Ching Lung," a/k/a "Hui Long,"

**ERIC YONG WOO,** a/k/a "Nan Li," a/k/a "Yong Zhao Hu,"

**JIAYU CHEN,** a/k/a "John's Brother in-law," a/k/a "Jaiyu Chen,"

**TAO LIU,** a/k/a "Xiong Liu," a/k/a "Ming Lu," a/k/a "Antony Liu," a/k/a "Jason Liu Tao," a/k/a "Lucas Liu," a/k/a "Tao Jason Liu," a/k/a "Antony Lee," a/k/a "Zhong Liu,"

## SUPERSEDING INDICTMENT

Count 1:    Conspiracy to Distribute Five Kilograms or more of Cocaine --- (In violation of 21 U.S.C. §§ 841 & 846)

Count 2:    Conspiracy to Distribute Five Kilograms or more of Cocaine, Knowing and Intending it will be Unlawfully Imported into the United States --- (In violation of 21 U.S.C. §§§ 959, 960, 963)

Count 3:    Conspiracy to Commit Money Laundering --- (In violation of 18 U.S.C. §1956(h))

Counts 4-7: Attempted Identity Fraud --- (In violation of 18 U.S.C. §§ 1028(a)(1) & (f))

Counts 8-11: Bribery --- (In violation of 18 U.S.C. § 201(b)(1))

Count 12:    Conspiracy to Commit Money Laundering --- (In violation of 18 U.S.C. § 1956(h))

Counts 13-14: Money Laundering --- (In violation of 18 U.S.C. § 1956(a)(2)(A))

Forfeiture Notice:    18 U.S.C. § 982; 21 U.S.C. §§ 853 & 970

*A true bill.*

*Foreman*

*Filed in open court this*  2 ⅟  *day of September, 2020.*

*Clerk*

*Bail, $*

11144587

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| TAO LIU, | ) |
| a/k/a "Xiong Liu," a/k/a "Ming Lu," a/k/a "Antony Liu," | ) |
| a/k/a "Jason Liu Tao," a/k/a "Lucas Liu," | ) |
| a/k/a "Tao Jason Liu," a/k/a "Antony Lee," | ) |
| a/k/a "Zhong Liu," | ) |
| *Defendant* | |

Case No.    1:19-CR-334

**UNDER SEAL**

## ARREST WARRANT

To:     Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     TAO LIU (see a/k/a's above)

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☑ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint

☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Distribute Five Kilograms or more of Cocaine (21 U.S.C. §§ 841 & 846); Conspiracy to Distribute Five Kilograms or more of Cocaine, Knowing and Intending it will be Unlawfully Imported into the United States (21 U.S.C. §§ 959, 960, 963); Conspiracy to Commit Money Laundering (18 U.S.C. §1956(h)); Attempted Identity Fraud (18 U.S.C. §§ 1028(a)(1) & (f)); Bribery (18 U.S.C. § 201(b)(1)); Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)); and Money Laundering (18 U.S.C. § 1956(a)(2)(A))

Date:  9/24/2020

_____
*Issuing officer's signature*

City and state:     Alexandria, Virginia

_____
*Printed name and title*

INFORMATION COPY ONLY

NOTICE: BEFORE ARREST, VALIDATE THROUGH NCIC ORIGINAL HELD BY U.S. MARSHAL.

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ |
| Date: _____          _____ *Arresting officer's signature* |
|          _____ *Printed name and title* |